## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| LANCE MOOREHEAD,<br>Individually and on behalf of all other<br>persons similarly situated, known<br>and unknown, | ) ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No.  CIV-17-1308-F |
| CALIBER HOLDINGS CORPORATION<br>d/b/a CALIBER COLLISION CENTERS,<br>CALIBER COLLISION, and<br>CALIBER COLLISION EXPRESS | ) ) ) ) ) | |
| Defendant. | ) ) | JURY TRIAL DEMANDED |

### COLLECTIVE ACTION COMPLAINT

COMES NOW the Plaintiff Lance Moorehead, on behalf of himself and all other persons similarly situated, known and unknown, through his attorneys, and for his Complaint against Defendant Caliber Holdings Corporation d/b/a Caliber Collision Centers, Caliber Collision, and Caliber Collision Express ("Caliber" or "Defendant"), states as follows:

### PARTIES

1.     The Plaintiff is Lance Moorehead, an adult male resident of Cleveland County, State of Oklahoma, and citizen of Oklahoma.

2.      Caliber is a Delaware company doing business in Oklahoma County, State of Oklahoma, and having its principal place of business in Lewisville, Texas. Caliber maintains The Corporation Company, 1833 S. Morgan Road, Oklahoma City, OK 73128 as its service agent with the Oklahoma Secretary of State.[1] Caliber claims to have 470 "state-of-the-art repair centers" in seventeen states and the District of Columbia, including:   Arizona, California, Colorado, Delaware, Florida, Georgia, Maryland, Nevada, New Jersey, New Mexico, North Carolina, Oklahoma, Pennsylvania, South Carolina, Texas, Virginia, and West Virginia.   There are three Oklahoma Caliber locations including:   Edmond at 3501 South Broadway; Midwest City at 801 West Curtis Drive; and northwest Oklahoma City at 8020 Northwest Expressway.   Caliber anticipates substantial growth for 2017 including adding an additional 120 – 150 new locations and increasing revenue from $1.65 billion to $2.5 billion.

## JURISDICTION AND VENUE

3.      Plaintiff, individually and on behalf of others similarly situated, brings claims for failure to pay wages, including minimum wages in violation of Oklahoma's Protection of Labor Act as set out in 40 O.S. §165.1, et seq. and the Fair Labor Standards Act as set out in 29 U.S.C. §206, et seq.   Plaintiff brings an individual claim,

---

[1] As of March 15, 2017, the Oklahoma Secretary of State's records reflected that Caliber Holdings Corporation was in a suspended state associated with an unidentified Oklahoma Tax Commission issue.

and original jurisdiction is had in this action which is being brought pursuant to the Fair Labor Standards Act ("FLSA"), codified at 29 U.S.C. §201, *et seq.* Plaintiff brings an individual action for retaliation (including termination) after Plaintiff complained of such wage violations in violation of the FLSA and Oklahoma's public policy. Jurisdiction over the federal claims is vested in this Court under 28 U.S.C. §1331. This Court also has supplemental jurisdiction over the Oklahoma State Law claims under 28 U.S.C. §1367 in that all such claims are so related to claims in this action that they form part of the same cause or controversy under Article III of the United States Constitution.

4.    Defendant's wrongful actions taken against the Plaintiff occurred in Oklahoma County, Oklahoma and the Defendant can be served in that county in which it operates at least three locations.  The foregoing is within the Western District of the United States District Courts for Oklahoma wherefore venue is proper in this Court under 28 U.S.C. § 1391(b).

5.    Plaintiff, individually and on behalf of others similarly situated brings this claim for failure to pay wages for all hours worked, failure to pay minimum wages, overtime wages, and stand-by wages in violation of Oklahoma's Protection of Labor Act, as set out in 40 O.S. §161, *et seq*. and the FLSA as set out in 29 U.S.C. §206, *et se.* Plaintiff brings an individual claim for retaliation (including termination) after Plaintiff complained of such wage violations in violation of the FLSA, as set forth in 29 U.S.C.

arise out of the same core of facts, jurisdiction is vested over those claims under 28 U.S.C. §1367(a). Plaintiff seeks damages on his own account and on behalf of a class of others similarly situated.

6.     Caliber is a foreign company doing business in Oklahoma County, Oklahoma and Defendant can be served in that county. Oklahoma County is within the Western District Courts for Oklahoma wherefore venue is proper in this Court under 28 U.S.C. § 1391(b).

7.     The matter in controversy exceeds the sum or value of Seventy-Five Thousand Dollars ($75,000.00).

## COLLECTIVE ACTION ALLEGATIONS

8.     Plaintiff brings this action on behalf of himself and all other similarly-situated employees or former employees. The class Plaintiff seeks to represent is defined as follows: "All persons who worked for Caliber in the last three years and performed Class Duties, regardless of the person's title.

9.     "Class Duties" means examining vehicles to determine damaged parts, taking pictures of damage, and entering data associated with damage into Defendant's computer system.  From time to time Plaintiff would also physically repair the damage to the vehicles. Plaintiff was called both a "body technician" and a "service advisor," but in both positions, he undertook Class Duties.

10.     Defendant is aware or should be aware that federal law requires it to pay all employees full minimum wage and overtime wages for all hours over 40 worked in any work week.

11.     Plaintiff is similarly-situated to Defendant's other employees undertaking Class Duties because those employees were also paid in violation of the FLSA and subjected to Defendant's illegal policy or practice of: (a) failing to pay Plaintiff a minimum wage for hours worked; and (b) failing to pay Plaintiff overtime for all hours worked over 40 in a workweek.

12.     There are numerous similarly-situated current and former employees of Defendant who worked at the Defendant's service centers who would benefit from the Court authorizing issuance of notice of this lawsuit so that these employees may opt-in to this lawsuit.

13.     Similarly-situated employees doing Class Duties are known to Defendant and are identifiable in Defendant's payroll records.

## FACT ALLEGATIONS

14.     Defendant is a company who has approximately 470 repair centers in 17 states and the District of Columbia. Defendant's business provides collision repair services to consumers.

15.     Defendant's business provides collision repair services to consumers. Defendant is a private subsidiary of OMERS Private Equity Inc. with revenues estimated

at $1.65 billion and roughly 10,000 employees. See "How Caliber Collision is Dominating the Industry, Glenn Hunter, <u>CEO Magazine</u>, March 2017 (available online at <u>https://www.dmagazine.com/publications/d-ceo/2017/march/how-caliber-collision-is-dominating-the-industry/</u>).    Accordingly,    Defendants'    yearly    gross    receipts exceed $500,000.

16.    For the reasons set out in the paragraphs above, Defendant is a covered employer for the purposes of the FLSA.

17.    Plaintiff was employed with the title of "Service Advisor" and/or "Body Technician" from September 16, 2013 until his employment was terminated by Defendant in December 2015.    During that entire time, he undertook and was responsible for Class Duties.

18.    At any given time, Defendant employs 2 to 5 persons to undertake Class Duties at each of its approximately 470 repair centers located in various states.    Thus, the class is easily expected to exceed 1,000 members.

19.    Defendant does not sell automobiles and does not operate a car dealership. The Defendant's service centers provide estimates to customers with the goal of securing the associated repair work. Potential customers are steered to Defendant in conjunction with a contractual agreement with various insurance companies, such as USAA, Farmers, Horace Mann, Allstate, and others to steer their insureds to Defendants' shops.  These insurance companies in the above-noted relationship with Defendant will

be referenced herein as "Steering Insurance Companies". Defendant's business model requires those undertaking Class Duties to step into the shoes, regarding a limited subset of tasks, of and provide the insurance adjustment services previously undertaken by Steering Insurance Companies' adjusters, only with less authority and training.

20.     Plaintiff and others similarly situated, are not licensed adjustors, and do not exercise discretion or independent judgment with matters of significance regarding adjusting insurance claims. Instead, Plaintiff and others similarly situated mechanically followed Steering Insurance Company's' claims procedure and used claims adjusting software that generated an estimate as a mechanical result of the damaged car components revealed by Plaintiff's inspection of the vehicle.

21.     Steering Insurance Companies direct their insureds that they are required to secure an estimate from one of Defendant's service centers.

22.     Even if the Steering Insurance Company's insured informed Plaintiff that they do not intend on using Defendant's services to repair their automobile, Plaintiff was without discretion to refuse to provide the requested estimate.

23.     If Plaintiff or others similarly situated deem an automobile as a total loss, the Steering Insurance Companies can negate that decision limiting the repairs to only those they authorize.

24.     Defendant operates as Steering Insurance Company's de facto outsourced damage inspection and data entry service.

25.     Steering Insurance Companies retain control over the process and can modify or negate the estimates provide by Plaintiff. Steering Insurance Companies retain the tasks of interviewing the insureds and witnesses, evaluating the damage through the pictures and estimates provided by individuals such as Plaintiff, evaluating coverage issues, providing coverage recommendations, and determining liability. Plaintiff simply surveyed the damage, took photographs, and input that data into computer models to arrive at a mechanical calculation of damage.

26.     Plaintiff and others similarly situated, are supposed to be paid a commission of circa 5% of the repair costs after the repairs had been completed and the subject vehicle removed from Defendant's location.

27.     If the sales attributed to Plaintiff are below a minimum standard set by the Defendant, Plaintiff and others similarly situated, are paid less than minimum wage and, at times, are paid nothing.

28.     Plaintiff and others similarly situated complained about the way Defendant's pay him for Class Duties. In addition, they have asked Defendant to explain the indecipherable paystubs provided by Defendant. Complaints, such as these, often lead to the termination of that employee's employment with Defendant, as was the case with Plaintiff.

29.     Throughout the time of Plaintiff's employment, Defendant maintained Policies and Procedures requiring the Plaintiff and others similarly situated, to work no

less than 50 hours per week. Plaintiff and others similarly situated, are required to man their posts from 7:30 a.m. to 5:30 p.m. at least five days a week. The hours Plaintiff and other similarly situated were required to work was driven by the workload at the Defendant's service center. Regardless of the hours worked in a week Plaintiff and other similarly situated were not paid overtime for any hours worked over 40 in a week.

30.    Plaintiff and others similarly situated were rarely allowed to take a lunch break. However, Defendant automatically deducted 30 minutes each day from the hours worked as a lunch break.  Even if Plaintiff found time to eat lunch, Plaintiff and others similarly situated, are not relieved of their duties such that this time should not to count as hours worked.

31.    Defendant made no effort to track and record the Plaintiff's work hours. Thus, Defendant has failed for many years to properly account and track the long hours worked by Plaintiff and others similarly situated.

32.    Defendant maintains a workplace that violates numerous Federal and Oklahoma wage and hour laws.  Specifically, they exploit Plaintiff and others similarly situated, by refusing to pay overtime compensation, refusing to pay for all hours worked, refusing to pay minimum wage, refusing to provide accurate and understandable, itemized wage statements.

33.    Throughout, Plaintiff's and other similarly situated employment, Defendant failed to provide accurate and itemized wage statements, among other

things, gross wages earned, total hours worked, net wages earned, and all applicable hourly rates in effect during each pay period and the corresponding number of hours worked at each hourly rate. Defendant also failed to maintain complete and accurate payroll records for Plaintiff and others similarly situated showing, among other things, gross wages earned, total hours worked, net wages earned, and all applicable hourly rates in effect during each pay period and the corresponding number of hours worked at each hourly rate.

34.    Plaintiff lodged a pro-se complaint at the Oklahoma Department of Labor ("ODOL") related to a portion of the claims asserted herein. (See Exhibit 1, documents associated with Plaintiff's pro-se ODOL complaint.)

## FIRST CAUSE OF ACTION
## VIOLATIONS OF FLSA (29 U.S.C. §206)

35.    Plaintiff, for the First Cause of Action against the Defendant, Caliber, adopts and realleges the allegations contained in the numerical paragraphs above, and in addition, alleges and states:

36.    As alleged herein, at all relevant times, the FLSA applied to the Plaintiff and others similarly situated in their capacity as employees of the Defendant. 29 U.S.C. §206 states in pertinent part, that every employer shall be paid to each employee, not less than $5.85 an hour, beginning on the 60th day after May 25, 2007; $6.55 an hour, beginning 12 months after that 60th day; and $7.25 an hour, beginning 24 months after

that 60th day. FLSA requires that all employees must be paid minimum wage, which is currently $7.25 an hour.

37.    As alleged herein, Plaintiff and others similarly situated, were required to work for wages less than the legal minimum fixed by Federal and State law and/or were required to work without any payment of wages whatsoever.

38.    Plaintiff and others similarly situated, bring this action to recover the balance of all unpaid wages owed, with interest thereon, under 29 U.S.C. §206, as well as under Oklahoma's Protection of Labor Act, as set out in 40 O.S. §161, *et seq*.

39.    For Defendant's failure to pay, Plaintiff and others similarly situated, the legal minimum wage and/or payment of actual wages for all hours worked as required under Federal and State law, to the fullest extent permitted under the statutory timeframe.

40.    In addition to payment of the past wages and all applicable penalties allowable under the law, with interest thereon, Plaintiff, and others similarly situated seek attorneys' fees and cost incurred in prosecuting this action under the FLSA (29 U.S.C. §§215 and 216) and Oklahoma's Protection of Labor Act, as set out in 40 O.S. §161, *et seq*.

**SECOND CAUSE OF ACTION**
**VIOLATIONS OF FLSA (29 U.S.C. §207)**

41.     Plaintiff, for his Second Cause of Action against the Defendant, Caliber, adopts and realleges the allegations contained in the numerical paragraphs above, and in addition, alleges and states:

42.     Pursuant to the FLSA (29 U.S.C. §207) employees must be paid extra compensation for working overtime and no employer shall require an employee to work during any meal break and/or were interrupted by Defendant in violation of the law. Defendant counted this interrupted meal break as hours not worked by the Plaintiffs and others similarly situated.

43.     As a result of Defendant's failure to provide overtime pay, and time off for meal breaks that were not counted by Defendant as hours worked, Plaintiff and others similarly situated sustained damages in the amount of extra compensation due them for each overtime hour, as well as wages due for one  additional hour at their regular rate of pay for each time they were not permitted an interrupted meal break, to the fullest extent permitted under the statutory timeframe and pursuant to FLSA (29 U.S.C. §§215 and 216) and Oklahoma's Protection of Labor Act, as set out in 40 O.S. §161, *et seq.*

44.     As alleged herein, Plaintiff and others similarly situated, were required to work for wages less than the legal minimum fixed by Federal and State law and/or were required to work without any payment of wages whatsoever.

45.     In addition to payment of the past wages and all applicable penalties allowable under the law, with interest thereon, Plaintiff, and others similarly situated

seek attorneys' fees and cost incurred in prosecuting this action under the FLSA (29 U.S.C. §§215 and 216).

### THIRD CAUSE OF ACTION
### RETALIATORY DISCHARGE IN VIOLATION OF THE FLSA

46.    Plaintiff, for his Third Cause of Action against the Defendant, Caliber, adopts and realleges the allegations contained in the numerical paragraphs above, and in addition, alleges and states:

47.    Plaintiff and others similarly situated, were wrongful discharged after complaints of Defendant's failure to pay wages and that the terminations were in violation of the FLSA, 29 U.S.C. §215.   Plaintiff's and others similarly situated, terminations were also a violation of Oklahoma's public policy against discharging employees for complaining of failure to pay wages in accordance with Oklahoma law as set out in *Reynolds v. Avance, Inc.*, 232 P.3d 907 (2009) and 40 O.S. §§165.1 to .3, .7 to .9, .11 and 40 O.S. §199.

48.    As a direct result of Defendant's actions, the Plaintiff and other similarly situated, have suffered (and continues to suffer) lost wages in the form of back pay, present and front pay (along with the value of benefits associated with such wages), emotional distress and dignitary harm including worry, anxiety, sleeplessness, and similar unpleasant emotions. A significant factor in Plaintiff's termination was his complaints of working and not being paid.

49.    Because one of more of the Defendant's conduct was either willful, malicious, or at least, in reckless disregard of Plaintiff's rights, Plaintiff is entitled to recover punitive damages under the state claim and liquidated damages under the FLSA.

WHEREFORE, Plaintiff and others similarly situated, pray that the Court enter judgment against Defendant, as follows:

A.    For damages under the FLSA and Oklahoma's wage laws, Plaintiff and others similarly situated are entitled to unpaid wages, prejudgment interest, post judgment interest, liquated damages, attorney fees and costs.

B.    Plaintiff and others similarly situated are entitled to equitable relief in the form of a declaration that Defendant's wage policy is unlawful as applied both to Plaintiff and to other employees similarly situated and an injunction against the continued use and enforcement of such policy as to Defendant's other employees.

C.    Because the actions of Defendant were willful, Plaintiff is entitled to liquidated damages under the FLSA in an amount equal to the unpaid wages and overtime.

D.    Under the anti-retaliation provisions of the FLSA and under Oklahoma's public policy wrongful discharge doctrine Plaintiff is entitled to recover for dignitary harms in addition to past, present, and future lost earnings and punitive damages under the public policy claim.

E.    Because the actions of Defendant were willful, wanton, malicious or, at the least, in reckless disregard of Plaintiff's state and federal rights, Plaintiff is entitled to punitive damages both under the state law public policy wrongful discharge claim and under the FLSA's anti-retaliation provisions.

F.    Because Plaintiff's injuries arise from an unlawful policy, Plaintiff should, upon discovery of the identity of the similarly treated employees, be entitled to a certification of a class of injured employees entitled to such relief. There are approximately, to Plaintiff's

knowledge, over sixty employees who would be  subject to the same unlawful policy and who would have suffered the same injury with the only distinction between the amounts of injury each suffered.

G.      Be granted judgment in favor and  against the Defendant on all his claims and that this Court grant the Plaintiff all available compensatory damages, punitive damages, liquidated damages, pre- and post-  judgment interest, costs, attorney's fees and any other legal or equitable relief allowed by law.


                              Respectfully submitted,

ATTORNEY LIEN CLAIMED        /s/ Jacque Pearsall
                              Jacque Pearsall, OBA # 18317
                              2548 NW Expressway, Suite 102
                              Oklahoma City, OK 73112
                              Telephone: (405) 609.6601
                              Facsimile: (405) 673.5785
                              Email: jacquepearsall@gmail.com

                              Attorney for Plaintiff and Others Similarly Situated

## CONSENT TO BECOME A PARTY PLAINTIFF

Pursuant to the Fair Labor Standards Act of 1938, 29 U.S.C. §216(b), I hereby

consent to be a party plaintiff in the foregoing action, and I verify that I have reviewed

the Complaint and approve of its allegations.

Date: _10/22/17_

_____

Lance Moorehead